**Henry KIRK, Plaintiff,**

v.

**ARC STEAMSHIP COMPANY, Inc. and Weyerhaeuser Timber Company, Defendants.**

**ARC STEAMSHIP COMPANY, Inc., Co-Defendant and Third Party Plaintiff,**

v.

**WEYERHAEUSER STEAMSHIP COMPANY, Third Party Defendant.**

United States District Court
S. D. New York.
Jan. 17, 1958.

Kirlin, Campbell & Keating, New York City, for defendant and third party plaintiff, Arc S. S. Co., Inc., Thomas R. McLoughlin and Daniel J. Dougherty, New York City, of counsel.

Symmers, Fish, Warner & Nicol, New York City, for third party defendant, Weyerhaeuser S. S. Co., William Warner, New York City, of counsel.

PALMIERI, District Judge.

These motions to dismiss a third-party complaint[1] arise out of an action to recover for personal injuries sustained by a seaman while on a wharf attending to a ship's moorings. Suit was brought in the first instance against the shipowner (Arc Steamship Company, Inc.) and the wharf owner (Weyerhaeuser Timber Company). Thereafter, the shipowner, as third-party plaintiff, sued the time charterer of the vessel (Weyerhaeuser Steamship Company), as third-party defendant, on the ground that the charterer breached the "safe berth" clause of the charter. The breach of the charter is the sole ground on which the shipowner seeks recovery from the charterer.[2]

The seaman's injuries were suffered when a slingman's shelter on the wharf was blown over upon him. In his suit against the shipowner he alleges that his injuries were caused by the unseaworthiness of the vessel, the shipowner's failure to take measures for his safety, the shipowner's failure to provide him with a safe place to work, and by the issuance to him of an order which was "improvident and indiscriminate" under the circumstances. His suit against the wharf owner is premised on the "defective and insufficient" construction, maintenance, and/or state of repair of the shelter.

The shipowner and the wharf owner have answered and filed cross-claims against each other. The shipowner has also filed a third-party complaint against the charterer; and it is this complaint which is now attacked by the charterer's motions to dismiss. The third-party complaint states two causes of action. It alleges the existence of the charter, and further alleges, in the first cause of action, that "[p]ursuant to said Charter Party, third party defendant agreed and warranted to provide a dock, wharf or place where the [vessel] might safely lie." There follows an allegation that the charterer failed to provide such a dock, and that such failure was the "primary and active" cause of any liability the shipowner may incur in the main action. In its second cause of action, the shipowner alleges that "[u]nder the terms of [the charter, the charterer] was under a duty to provide a dock, wharf or place where the [vessel] might safely lie and to take reasonable steps to avoid all dangers, to report all dangers, and to eliminate any dangers which might be present or might be created during the vessel's berthing." There follows an allegation of a breach of this duty and an allegation that such breach was the cause of any liability the shipowner may incur in the original action. In neither of these causes of action does the shipowner allege the particular facts or circumstances which are the basis of its claim of breach.

The shipowner points to the following clauses of the charter as the sources of the charterer's duties as set forth in the complaint:

"Vessel to be placed at the disposal of the Charterers, at a safe U. S. Pacific Port not south of Coos Bay, port at Charterers' option.

---

1. The motions are based alternatively on Rule 12(b) (6) and Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A.

2. "Common sense and reason compel the conclusion that the subject time charter states a cause of action * * *." Third-party plaintiff's memorandum of law in opposition to third-party defendant's motion for summary judgment, 7.

Port to be declared by Charterers ten (10) days prior to expected arrival of vessel, in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as the Charterers may direct.

"6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place that Charterers or their Agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground."

It is true, as the charterer contends, that the "safe berth" clause is intended to foster the safety of the vessel and that its breach is normally associated with physical damage to the hull of the vessel. It is also true that the "safe berth" provisions are consonant with the time charterer's usual and traditional separation from the navigation and management of the vessel. See Gilmore & Black, The Law of Admiralty § 4–1 (1957). This is not enough, however, to warrant the drastic remedy sought by the charterer's motion to dismiss.

The shipowner, while not disputing these principles, relies upon Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and urges it as a parallel situation. The shipowner argues that just as the Supreme Court there held the stevedore liable to the shipowner for personal injury damages arising out of the manner in which the stevedore performed under its contract, the charterer here should be held liable to the shipowner if the charterer breached its contract.

■ There appear to be no reported cases holding either that breach of a "safe berth" clause does or that it does not give rise to an action for damages for personal injuries caused by the breach.[3] It may be that the general measure of damages can be substantiated in this case and that the third-party plaintiff may be able to prove damages and their proximate causation by the breach of the time charter. 5 Corbin, Contracts §§ 997, 1006, 1007 (1951). To grant the motion to dismiss would be to hold that breach of a "safe berth" clause can never be the proximate cause of a personal injury. Accordingly, the motion to dismiss is denied.

■ The motion for summary judgment must also be denied, at this time. As mentioned above, the shipowner has not pleaded the underlying facts or circumstances on which it bases its claim that the "safe berth" clause has been breached. The third-party plaintiff is not held to the same theory of negligence as the plaintiff seaman. The shipowner's claim of breach may rest on facts which are not pleaded in the prior papers. 3 Moore, Federal Practice par. 14.07 (2d ed. 1948). Since the facts upon which the shipowner's claim of breach are not yet stated, it is not possible to hold, at this time, "that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). It is not even possible to determine what facts the shipowner will rely upon to establish the breach. Accordingly, the motion for summary judgment must also be denied.

Motion to dismiss denied. Motion for summary judgment denied without prejudice to its renewal, if the third-party defendant is so advised, at an appropriate stage of the pre-trial proceedings.

So ordered.

---

3. In at least one case damages arising from the breach of a "safe berth" clause have been allowed for damages other than to the ship's hull. In Carbon Slate Co. v. Ennis, 3 Cir., 1902, 114 F. 260 damages for trimming charges, dead freight, and dispatch money were allowed against the charterer upon breach of the "safe berth" clause.