Famous **ROGERS**

v.

**UNITED STATES LINES COMPANY,**
**Defendant and Third-Party**
**Plaintiff,**

v.

**E. J. LAVINO & COMPANY,** Third-Party
**Defendant-Appellant.**

**No. 13666.**

United States Court of Appeals
Third Circuit.

Argued Dec. 19, 1961.

Decided May 15, 1962.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The base of the present action is a final judgment in favor of Rogers, a longshoreman, for damages arising out of personal injuries against United States Lines Company. The latter is the owner of S.S. Pioneer Tide. Rogers was helping to discharge the Pioneer Tide's cargo when he was hurt. E. J. Lavino & Company was the consignee of the cargo. The trial court, sitting without a jury, found that E. J. Lavino & Company had the duty and responsibility to arrange and pay for the discharge of the cargo which it did through its subsidiary, Lavino Shipping Company, a stevedore contractor by whom Rogers was employed.[1] The court held as a matter of law that the ship's liability to Rogers arose from the fact that the discharge of the cargo was not carried out in a reasonably safe, proper and workmanlike manner; that E. J. Lavino & Company was under a duty not to expose United States Lines to damage or loss arising out of the discharge of the cargo; that E. J. Lavino & Company failed to perform that duty through its agent; that E. J. Lavino & Company had impliedly warranted to United States Lines the careful, proper and workmanlike performance of the discharge; that E. J. Lavino & Company breached that duty and that United States Lines is entitled to indemnity against E. J. Lavino & Company for the amount paid by the former to Rogers in satisfaction of his claim with interest and for reasonable counsel fees and expenses incurred in defending against Rogers' claim.

Appellant attempts to restrict the contract between the parties solely to the bill of lading. However, the trial judge found that, in addition to the bill of lading, " * * * the practice followed between plaintiff (United States

Michael A. Foley, Philadelphia, Pa., for appellant.

Mark D. Alspach, Philadelphia, Pa. (Robert Cox, Krusen, Evans & Byrne, Philadelphia, Pa., on the brief), for appellee, United States Lines Company.

1. Wolcott M. Heyl, Vice President of E. J. Lavino & Company, testified that Levino Shipping Company " * * * is a separate division of the company for handling stevedoring."

Lines) and defendant (E. J. Lavino & Company) on previous occasions that defendant would arrange for the unloading by the Lavino Shipping Company on its behalf became an implied term of each contract of F. I. O. shipment of ore from the Philippines to Philadelphia and was a term of the contract covering this shipment, only part of such agreement being integrated into the F. I. O. bill of lading * * *. The agreement that defendant would arrange for the discharge of the cargo became firm at the time the booking letter was sent." The record justifies the finding. Lavino, by pointing to references to the bill of lading in the ship's pretrial memorandum and a comment by the judge, seems to be contending that the case was tried on the bill of lading alone. Actually, United States Lines pretrial memorandum asserted several grounds in support of its claim for indemnity among them:

> "4. In view of the relationship of the parties, E. J. Lavino & Company impliedly warranted to U. S. Lines the careful, proper and workmanlike performance of the discharge by the persons or parties selected by E. J. Lavino & Company to do the work. E. J. Lavino & Company breached this warranty."

United States Lines, through its pier operations superintendent, presented evidence that F. I. O. on a bill of lading, standing for the phrase "Free In and Out", meant that the carrier had nothing to do with the loading or unloading of the specified cargo. With reference to Lavino chrome ore shipments, the type here involved, the United States Lines had nothing to do with arranging for the discharge of cargo. E. J. Lavino & Company representing Lavino Shipping Company, actually directed the manner and method of the cargo's discharge, even notified United States Lines where it wanted the vessel, arranged for its berth and for railroad cars to receive the cargo. Said the witness "When that vessel docked at the pier they designated where they wanted their cargo, it was delivered as far as we were concerned, according to this bill of lading."

Mr. Heyl's testimony on cross-examination was of substantial assistance to the ship's above quoted theory of indemnity. He had said on direct examination that it was the carrier's obligation under an F. I. O. bill of lading to both carry and deliver the cargo. On cross-examination he stated "In this particular instance the discharging was arranged by Lavino Shipping Company because of the fact that the expenses were not for account of the vessel. * * * In this specific case, due to the fact that we have our own stevedoring setup, the ship says 'Go ahead,' and we can do that, it is all right, take it off, and that's it. * * * Well, we just might say this, that inasmuch as there are a number of these parcels of ore being regularly carried, and it is all done on the basis of what—in each case the same, it was known beforehand that it would be elected that the Lavino Shipping Company arranged to take it free of expense to the vessel."

After the completion of the trial evidence the court accepted a proposed conclusion of law from the ship plaintiff reading:

> "Under the evidence and the applicable law, the relationship between the parties was such that E. J. Lavino & Company impliedly warranted to United States Lines Company the careful, proper and workmanlike performance of the discharge. E. J. Lavino & Company breached that warranty."

Plainly, the question whether the parties had agreed that the appellant discharge its cargo was properly before the trial court for decision.

█ This brings us to the main point, whether under the facts as found by the court, United States Lines was entitled to indemnity from its consignee. Certain fundamentals can be disposed of quickly. We are not dealing here, as is suggested, with a claim for indemnity by a tort-feasor on a theory of passive

negligence. This is a matter of contractual indemnity which need not be in writing and may, as in this instance, be implied. Weyerhaeuser SS Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).[2] As we see it, appellant's failure to make the stevedore employer a third party defendant in no way delimits the application of the above principles to this appeal.

■ What remains is whether indemnification should be defeated solely because appellant did not directly unload its cargo but had that attended to by its stevedoring division. We are satisfied that it should not. There is no longer any guess concerning the relationship of the parties. Appellant, in accepting responsibility for the unloading of its cargo, entered into "a contractual undertaking to [perform] 'with reasonable safety,'". Weyerhaeuser, supra, 355 U.S. p. 565, 78 S.Ct. p. 440. This suit comes well within the Supreme Court's description of the Ryan claim. "It is a simple action to recover, under a voluntary and self-sufficient contract, for a sum measured by foreseeable damages occasioned to the shipowner by the injury or death of a longshoreman on its ship." Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., supra, 350 U.S. p. 130, 76 S.Ct. p. 235.

A strikingly similar situation to the one before us was passed upon by the Fourth Circuit Court of Appeals in American Export Lines, Inc. v. Revel, 266 F.2d 82 (1959) which affirmed an award of indemnity by the district court, Revel v. American Export Lines, Inc., 162 F.Supp. 279 (1958). There the ship had space-chartered a portion of its cargo space to the United States. The loading and discharging of the particular cargo was the responsibility of the Government. There was no specific provision for indemnity to the vessel. The Government had an independent contractor perform the stevedoring services. He recovered against the ship. The district court found that the ship had the right to be indemnified by the United States.[3] The court said pp. 286–287:

"While it is manifest that the United States is not responsible for the negligence of an independent contractor such as Whitehall, there would seem to be an implied contractual agreement between Export and the United States wherein the United States agreed to provide the stevedoring services to such extent as they would be performed 'with reasonable safety'. This is the import of Weyerhaeuser which disclaims the necessity of an express indemnity clause."

Speaking of the shipowner's claim for indemnity Judge Soboloff in his circuit opinion said p. 87:

"His action is in contract and recovery depends upon whether his conduct has been such as to bar enforcement of the contract, and not whether he has been found negligent in regard to the longshoreman."

Appellant has not called our attention to any reported opinions which indicate that recovery should be denied under the factual and legal circumstances involved. The agreement found to exist between United States Lines and appellant in essence is no different from contracting to supply a suitable ship's berth as upheld in Cities Service Transp. Co. v. Gulf Refining Co., 79 F.2d 521 (2 Cir. 1935). See also Kirk v. Arc Steamship Company, 21 F.R.D. 293 (S.D.N.Y.1958); DiMeglio v. The Black Condor, 120 F. Supp. 865 (S.D.N.Y.1954).

United States Lines was allowed attorneys' fees and expenses. Appellant ob-

---

2. See also Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman SS Corp. v. Dugan and McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

3. It should be noted that in Revel the United States had made the stevedore contractor a third party defendant and was allowed recovery over against it.

jects to these for the same reasons it opposes indemnity. It cites our opinion in Quinones v. Township of Upper Moreland, 3 Cir., 293 F.2d 237 (1961) as sustaining its position. That decision is not applicable.

■ The amount of the fee allowance equals the cost to United States Lines for the defense of the primary litigation and the expenses total the same as those incurred by United States Lines in that first suit. These allowances were within the discretion of the trial court. They are not unreasonable. Cf. Paliaga v. Luckenbach SS Co. v. Turner and Blanchard, Inc., 301 F.2d 403 (2 Cir., March 22, 1962).

The judgment of the district court will be affirmed.