**Bernardo PENORO, Plaintiff,**

v.

**REDERI A/B DISA and VESSEL DISA,
her motors, engines, boilers, gear
and tackles, Defendants.**

**REDERI A/B DISA, Defendant and Third-
Party Plaintiff-Appellant,**

v.

**CUNARD STEAMSHIP COMPANY, Ltd.,
Third-Party Defendant-Appellee.**

**No. 345, Docket 30911.**

United States Court of Appeals
Second Circuit.

Argued Feb. 24, 1967.

Decided April 3, 1967.

dictment named section 1708. This we regard as immaterial.

William P. Kain, Jr., New York City (Haight, Gardner, Poor & Havens and Thomas F. Molanphy, New York City, on the brief), for defendant and third-party plaintiff-appellant.

John W. Castles, 3d, New York City (Lord, Day & Lord, William J. Brennan, and Roger C. Ravel, New York City, on the brief), for third-party defendant-appellee.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

On October 14, 1963, Bernardo Penoro, a longshoreman employed by appellee, Cunard Steamship Company, Ltd., was seriously injured while unloading a ship owned by appellant, Rederi A/B Disa, in New York harbor. On May 15,

1964, Penoro commenced suit for $100,000 against Rederi as shipowner. On June 23, 1965, Rederi, alleging that Penoro's injuries had been caused by the fault of Cunard, moved to implead Cunard as a third party defendant on the ground that Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) entitled appellant to indemnity from appellee for any liability appellant might have to Penoro. In *Ryan* the Supreme Court held that a shipowner has a right of indemnity to recover from a stevedore the amount of judgment which the shipowner was required to pay to one of the stevedore's employees for injuries incurred on its vessel but caused by the fault of the stevedore; the stevedore was said to have breached an "implied warranty of workmanlike service."

On March 23, 1966, appellee stevedore moved in the trial court for a dismissal of the third party indemnity action or in the alternative for a stay from the prosecution of that action pending arbitration.[1] The crux of appellee's motion was the somewhat unusual circumstance that at the time of the injury of its employee Cunard was not only the stevedore but also the charterer of the ship. Under the time charter between Rederi and Cunard, entered into on April 10, 1963, Cunard, as the charterer, was responsible for arranging and paying for the loading and unloading of the vessel;[2] and Cunard had elected to do its own stevedoring in New York. The time charter also provided that any dispute between the shipowner and charterer, arising under the charter, would be referred to arbitration.[3] The issue presented was whether or not Rederi's *Ryan* indemnity action against Cunard, as stevedore, was subject to the arbitration agreement in which Cunard is described only as charterer.

In the court below appellant contended that its *Ryan* action was independent of the charter, and that the holding in that case provided it with a right to indemnity from Cunard *as stevedore* wholly apart from the charter and from Cunard's status as charterer; that, in fact, *as charterer* Cunard was not subject to any duty of indemnity under the *Ryan* doctrine;[4] and that consequently the *Ryan* action did not "arise under" the charter. Cunard, on the other hand, claimed that a stevedore's implied warranty under *Ryan* must inhere in some contract made by the stevedore.[5] It argues that here the stevedore had made no contract with the charterer, because they were in fact the same person, and the only contract the stevedore had made with the shipowner was the time charter, which it had made in its capacity of charterer. Cunard asserts that any *Ryan* implied warranty therefore must inhere in, i. e. "arise un-

---

1. Authority for district courts to stay proceedings pending arbitration is provided in 9 U.S.C. § 3.

2. Clause 4 of the Charter provides:
   "Whilst on hire the Charterers to * * * arrange and pay for loading, trimming, stowing * * *, unloading, weighing, tallying and delivery of cargoes. * * *"

3. Clause 23 of the Charter provides:
   "Any dispute arising under the Charter to be referred to arbitration in London one arbitrator to be nominated by the Owners and the other by the Charterers, and in the case the Arbitrators shall not agree then to the decision of an Umpire to be appointed by them, the award of the Arbitrators or Umpire to be final and binding upon both parties."

4. McNamara v. Weichsel Dampfschifffahrts A. G. Kiel Germany, 339 F.2d 475, 478 (2 Cir. 1964) ; D/S Ove Skou v. Hebert, 365 F.2d 341, 351 (5 Cir. 1966).

5. In *Ryan* the stevedore had a contract with the shipowner; however, the Court was quick to apply *Ryan* where the stevedore's contract was with someone other than the shipowner. In Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), the stevedore had contracted with the charterer. The Court held that the stevedore's implied warranty of workmanlike service was for the benefit of the ship; therefore, the shipowner could recover indemnity from the stevedore as third party beneficiary. See also Waterman SS Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960) [stevedore contract with cargo consignee].

der," the time charter and fall within the scope of the arbitration clause.[6]

The trial court apparently adopted Cunard's theory of the case and on July 5, 1966, decided the issue in its favor.[7] Rederi's action was not dismissed but was ordered stayed pending arbitration pursuant to the charter. Rederi now seeks review, under 28 U.S.C. § 1292(a) (1), of the interlocutory order granting the stay.[8] Cunard moves to dismiss the appeal on the ground that § 1292(a) (1) does not apply. We grant the motion.

Section 1292(a) (1) provides: "(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court * * *."

Whether or not a stay of court proceedings is an "injunction" within the meaning of § 1292(a) (1) has depended on what proceedings are stayed by what court. The general principle is that where a court stays a proceeding *on its own docket,* that is not an injunction but merely a calendar order issued under the court's inherent power to regulate the administration of its own business. On the other hand, where a court stays a proceeding *in another court,* that stay is considered to be an injunction. Traditionally, only a court of equity could stay proceedings in another court.

In Enelow v. New York Life Insurance Company, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), the Supreme Court first considered the problem of stays of court proceedings under Title 28 U.S.C. § 129, predecessor to § 1292(a) (1). There the trial court had granted defendant's petition to try his *equitable defense* before trying plaintiff's *action at*

6. While Cunard argued here and below that its *Ryan* obligations arise under the charter, there is some indication in its brief that, before the arbitrators in London, it will speak another language and argue that *Ryan* as American law has no application to a time charter entered in England.

7. While there is no doubt that the basis of *Ryan* is contract rather than tort, Italia Societa v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the trial court's concept of "contract" for *Ryan* purposes—that there could be no contract other than the time charter—is an extremely narrow one and is apparently in conflict with what we said in DeGioia v. United States Lines Co., 304 F.2d 421, 425 (2 Cir. 1962):

"The primary source of the shipowner's right to indemnity, as a practical matter, is his nondelegable duty to provide a seaworthy ship, by virtue of which he may be held vicariously liable for injuries caused by hazards which the longshoremen either created or had the primary responsibility or opportunity to eliminate or avoid. * * * The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institu-

tions most able to minimize the particular risk involved. * * * Thus while the cases speak in the language of contract, it is misleading to cling to the literal implications of that language. The scope of the stevedore's warranty of workmanlike performance is to be measured by the relationship which brings it into being. Since the shipowner here was held liable for injuries the jury found were the foreseeable result of the stevedores' failure to perform in a workmanlike fashion, it may recover indemnification, whether it was strictly a 'third-party beneficiary' or not. * * *"

at 425–426. See also Williams v. Pennsylvania R. R., 313 F.2d 203, 212 (2 Cir. 1963); Rogers v. United States Lines Co., 303 F.2d 295 (3 Cir. 1962). The cases cited by the court below, Giuffre v. The Magdalene Vinnen, 152 F.Supp. 123 (E.D. N.Y.1957); Green Steel & Wire Co. v. F. W. Hartmann & Co., 235 N.Y.S.2d 238 (Sup.Ct.1962), aff'd, 20 A.D.2d 683, 247 N.Y.S.2d 1008, leave to appeal denied, 249 N.Y.S.2d 886 (Ct.App.1964), are not directly applicable since they did not involve claims based on the *Ryan* implied warranty doctrine.

8. Appellant earlier sought a discretionary interlocutory appeal under 28 U.S.C. § 1292(b). Leave to appeal under § 1292 (b) was denied by this court on September 7, 1966.

*law.* Although there was only one court involved, the Supreme Court treated the court as consisting of two separate "sides" and held that the equity side of the court had enjoined the law side. The order was therefore appealable. In Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935), decided the same day, defendant in a suit on a contract pleaded an exclusive arbitration clause in the contract; the court denied a stay of the contract action pending arbitration. The Supreme Court held that the issue of the arbitration clause raised an equitable defense and that the order denying the stay was appealable under *Enelow,* which the Court interpreted as holding,

"[A]n order granting or denying a stay based on an equitable defense or cross-bill interposed in an action at law * * * is appealable under [present 1292(a) (1)] * * *."

293 U.S. at 452, 55 S.Ct. at 314.

*Enelow* was decided shortly before the unification of law and equity under the Federal Rules of Civil Procedure, and it might have been thought that this unification would have spelled the end for *Enelow's* "two sides" approach to § 1292 (a) (1). Indeed, that was the position of this court in Beaunit Mills, Inc. v. Eday Fabric Sales Corp., 124 F.2d 563 (2 Cir. 1942). The Supreme Court, however, reaffirmed *Enelow,* on virtually the same facts, in Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). In two later cases, City of Morgantown v. Royal Insurance Co., Ltd., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) and Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), the Court was presented with a reverse situation from *Enelow-Ettelson*: the plaintiff's action was one originally cognizable in equity rather than in law. In *Morgantown* the defendant interposed a counterclaim in law, and in *Baltimore Contractors* the defendant raised an equitable defense. As a court at law could not enjoin the equitable action, and as a court of equity would not enjoin itself, the orders below were both held non-appealable. In both cases the equity side had merely exercised its inherent power to regulate proceedings before it; no injunction had been issued.

■ The result of the Supreme Court's decisions is that an order granting or denying a stay of an action at law pending determination of an equitable defense or counterclaim is appealable. But if the original action is equitable *or* if the defense or counterclaim is legal, then the order is not appealable. Schine v. Schine, 367 F.2d 685 (2 Cir. 1967). Needless to say, this anomalous result, based on historical distinctions rather than on policies relevant to the desirability of allowing interlocutory appeals, has not escaped adverse criticism. See, e. g., 5 Moore, Federal Practice (2d ed. 1966) ¶ 39.13[2]; 75 Harv.L.Rev. 351, 371–375 (1961). The Court itself has acknowledged the "incongruity" which "springs from the persistence of outmoded procedural differentiations" but has decided to wait for Congress to make an amendment if it should choose to do so. Baltimore Contractors, Inc. v. Bodinger, supra, 348 U.S. at 184–185, 75 S.Ct. 249.

■ Orders by courts in admiralty granting or denying stays of proceedings before them have been spared the confusion of *Enelow-Ettelson-Morgantown-Baltimore Contractors.* Such orders have consistently been held not to be injunctions within the meaning of § 1292 (a) (1) even if based on equitable defenses or counterclaims. In Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935), decided the same term as *Enelow,* a court in admiralty had stayed proceedings before it pending arbitration between the parties. Despite the similarity to the *Shanferoke* case, the Supreme Court held that admiralty courts had the power, without need to resort to the aid of equity, to delay actions before them pending the outcome of some other

proceeding. Such an order was not one issued by equity [9] and therefore not appealable. This court has consistently followed the holding of *Schoenamsgruber*. Moran Towing & Transportation Co. v. United States, 290 F.2d 660 (2 Cir. 1961); Solomon v. Bruchhausen, 305 F. 2d 941 (2 Cir. 1962); Lowry & Co. v. SS LeMoyne D'Iberville, 2 Cir., 372 F.2d 123, January 21, 1967 [proceedings stayed pending foreign arbitration].

■ Rederi now contends that *Schoenamsgruber*, and our own decisions following it, are in some fashion undercut by the unification of civil and admiralty rules which became effective July 1, 1966.[10] Syllogistically summarized its argument is:

(1) The grant or denial of a stay of an action at law pending arbitration is appealable *(Shanferoke)*.

(2) After unification actions in admiralty are to be treated no differently than actions in law.

(3) Therefore the grant or denial of a stay of an action in admiralty is appealable.

The difficulty lies in the second premise. The new rules make clear that actions in admiralty are *not* to be treated like actions in law in every respect (e. g., right to jury trial). Rule 9(h) provides:

"A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 26(a), 38(e), 73(h), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims."

Although none of the rules referred to in Rule 9(h) deal directly with interlocutory appeals under § 1292(a) (1), the absence of such a reference does not mean the draftsmen intended to change § 1292(a) (1) in any way.[11] The *Ettelson* case teaches that the separate "sides" of the district court may survive unification for purposes of § 1292(a) (1). Since a court in admiralty had the power to stay its own proceedings without the aid of equity prior to unification, there

---

**9.** As an historical matter, there seems to be no reason why the chancellor would not have enjoined proceedings before courts of admiralty as well as before courts of law. See 75 Harv.L.Rev. 351 (1961).

**10.** 383 U.S. 1031 (Feb. 28, 1966). We assume without deciding that the new rules apply to this appeal from an order of July 12, 1966 even though the proceedings began some two years earlier.

**11.** With respect to § 1292(a) (3), under which most interlocutory appeals are taken, the draftsmen specified that the new rules were not to affect former practice. Rule 73(h) provides:
"These rules do not affect the appealability of interlocutory judgments in admiralty cases pursuant to Title 28, U.S.C., § 1292(a) (3). The reference in that statute to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of Rule 9(h)."
§ 1292(a) (3) provides for appealability of:

"Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."
There are intimations in *Schoenamsgruber*, 294 U.S. at 458, 55 S.Ct. 475, 79 L.Ed. 989 that § 1292(a) (3) might be the exclusive route to interlocutory appeals in admiralty cases, and the Fifth Circuit seems to have adopted that position. Stark v. Texas Co., 88 F.2d 182 (5 Cir. 1937). However, this court has held appealable under § 1292(a) (1) orders in admiralty which did not qualify under § 1292(a) (3). W. E. Hedger Transportation Corp. v. Gallotta, 145 F. 2d 870, 871 (2 Cir. 1944); Curtis Bay Towing Co. v. Tug Keven Moran, Inc., 159 F.2d 273, 275 (2 Cir. 1947) and these decisions have met with favorable comment. 6 Moore, Federal Practice, ¶54.06 [5] at p. 41. See also In re World Tradeways Shipping, Ltd., 373 F.2d 860 (2 Cir. March 15, 1967).

is no reason to believe that it somehow lost that power as a result of unification.

Even if we were to bring stays in admiralty into the thicket of *Enelow-Ettelson-Morgantown-Baltimore Contractors,* it would still be necessary to decide whether to apply *Enelow-Ettelson* (appealability) or *Morgantown-Baltimore Contractors* (non-appealability). There is no need to disturb existing practice by applying *Enelow-Ettelson.* While neither of those decisions turned expressly on the right to trial by jury, both opinions mentioned that right, and it is likely that the Supreme Court was concerned in those decisions that there be a right to immediate appeal from a ruling, the effect of which might be to keep plaintiff from a jury in the event that the equitable defense or counterclaim should be decided against him. 75 Harv.L.Rev. 351, 373–374 (1961). Since there is no right to jury trial in admiralty, this concern for access to the jury is inapplicable.

■ Stays of the kind with which this case is concerned are merely calendar orders. They do no more than delay proceedings; in the great majority of cases they do not, in practical effect, determine substantial rights of the parties or cause irreparable harm. They demonstrate no crying need for an exception to the final judgment rule. See Moore, Federal Practice (2d ed. 1966) ¶ 39.13[1]. In the instant case, Rederi, the appellant, may receive satisfaction for its idemnity claim in the arbitration proceeding.[12] If it does not, or if it receives only partial satisfaction, then it will be free to renew its *Ryan* indemnity claim in the district court. If, as the appellant argues, the *Ryan* claim against appellee, Cunard, as stevedore is independent of the time charter, then no decision or award by the arbitrator will

have any effect on that claim (except to the extent that a partial award by the arbitrator would reduce the amount of indemnity to which appellant is entitled).

The appeal is dismissed.

---

12. Clause 13 of the time charter provides: "* * * The Charterers to be responsible for loss or damage caused to the Vessel or to the Owners by goods being loaded contrary to the terms of the Charter by improper or careless bunkering or loading, stowing, or discharging of goods or any improper or negligent act on their part or that of their servants."