Lee **HOPSON**

v.

The **M/V KARL GRAMMERSTORF,** her engines, tackle, furniture and apparel, and **Karl Grammerstorf Schiffahrts G.M.B.H.**

Civ. A. No. 66–297.

United States District Court, E. D. Louisiana, New Orleans Division.

June 25, 1971.

Clifton S. Carl, Garrett & Carl, New Orleans, La., for plaintiff.

William E. Wright, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendants.

A. R. Christovich, Jr., Christovich Kearney & Malloy, New Orleans, La., for third-party defendant Standard Fruit & Steamship Co.

HEEBE, District Judge:

Plaintiff, Lee Hopson, brought this action against Karl Grammerstorf Schiffahrts G.M.B.H. *in personam* and the M/V Karl Grammerstorf *in rem* to recover damages for injuries he allegedly sustained while working on the vessel on March 18, 1966. The defendants denied liability and filed a third-party complaint against the stevedore-charterer, Standard Fruit and Steamship Company, seeking indemnification in the event it were found liable.

The basic issues presented by the pleadings were whether the injuries to the plaintiff were caused by the unseaworthiness of the vessel and whether Standard Fruit breached the warranty of workmanlike performance it owed the shipowner.

The case came on for trial without a jury on a previous day, and the Court, having heard the arguments of counsel and having considered all the evidence, is now fully advised in the premises and makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On March 18, 1966, plaintiff, Lee Hopson, was employed by Standard Fruit and Steamship Company as a longshoreman loading large rolls of paper aboard the M/V Karl Grammerstorf, owned by the defendant, Karl Grammerstorf Schiffahrts G.M.B.H., which was docked in the Port of New Orleans.

2. Each roll of paper is a cylinder about 4½ feet high and weighing about 3,000 pounds. The rolls are properly stowed in layers on their sides. Each succeeding layer is stowed in the grooves or "cuts" created by the layer beneath it. After a layer is completed, strips of wood, or "dunnage" are laid across it so that the cylinders for the next layer can be rolled across an otherwise uneven surface and properly stowed in the "cuts" of the completed layer.

3. On March 18, 1966, the plaintiff and three co-workers were loading the No. 2 hatch of the M/V Karl Grammer-storf. After the first layer of paper was loaded, dunnage was laid across it to enable the men to load the second layer.

4. During this loading process, the "dunnage" broke, causing one roll of paper to prematurely fall into a cut. The Court finds that the dunnage supplied was insufficient to bear the weight of the rolls moving across it.

5. Using hooks, plaintiff and his co-workers then attempted to move this roll into a different cut so they could finish the proper loading of the second layer.

6. The men are forbidden to insert the hooks into the paper itself. The plaintiff instead inserted his hook into the center of the wooden spool which forms the core of the paper roll. The Court finds this procedure to have been reasonable under the circumstances.

7. The plan was for plaintiff to lift the roll with the hook while his co-workers pushed against it. In this way the men hoped to bring the roll onto the dunnage beyond the break. The Court finds this plan to have been reasonable under the circumstances.

8. After plaintiff inserted the hook and began to lift the paper, the roll came free, causing him to fall. The Court finds that the plaintiff improperly performed his part of the lifting operation and that this negligence was one of the proximate causes of his fall.

9. The M/V Karl Grammerstorf was unseaworthy in failing to provide plaintiff with a reasonably safe place in which to work and with proper equipment for the assigned task. The Court finds that this unseaworthiness was one of the proximate causes of plaintiff's fall.

10. As a direct result of that fall, plaintiff sustained injuries to his head, neck and right shoulder.

11. Plaintiff underwent medical treatment for his injuries until April 15, 1966, when he was released as fully able to return to work on April 18, 1966.

12. The Fidelity and Casualty Company of New York, as compensation in-

surer of third-party defendant, paid compensation benefits of $170.00, as well as the medical expenses of $135.00 incurred for plaintiff's treatment.

13. Plaintiff subsequently underwent additional treatment for pain in the head and neck and for stiffness in the right shoulder, which injuries the Court finds to be a direct result of his accident. Plaintiff incurred expenses of $376.00 for this additional treatment.

14. Plaintiff was injured on March 18, 1966, and was not declared fit for duty until April 18, 1966. Plaintiff's average weekly wages at that time were $132.08. Hence, his lost wages for four weeks amount to $528.32.

15. Plaintiff has returned to work and has suffered no future loss of earnings or impairment of earning capacity.

16. Plaintiff has suffered pain and was damaged by that pain and suffering in the amount of $3,500.00.

17. The charterparty between defendant and third-party defendant obligated third-party defendant to "provide necessary dunnage and shifting boards * * * but owners to allow them the use of any dunnage and shifting boards already aboard the vessel."

18. Third-party defendant, through its employees, took control of the vessel's cargo spaces and loaded the paper using its own equipment, work methods and procedures. The officers and crew members of the vessel were not present in the area of the accident at the time of its occurrence, and all persons participating in or supervising the discharge of the cargo were employees of third-party defendant.

19. The accident and resulting injury sustained by the plaintiff were not caused or contributed to by any fault or neglect on the part of the ship's officers or crew members, and their conduct did not breach any provisions of the charterparty.

20. The accident and resulting injury were caused or contributed to by the fault, neglect and want of workmanlike performance on the part of third-party defendant in breach of its obligations to the vessel and to the defendant.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this case, and venue is properly laid in the Eastern District of Louisiana.

2. The plaintiff bears the burden of proving by a preponderance of the evidence that the M/V Karl Grammerstorf was unseaworthy in that he was not furnished a safe place to work or proper equipment for his assigned task, and that such unseaworthiness was a proximate cause of his injury. The mere occurrence of an accident aboard ship does not render the vessel owner liable.

3. The shipowner is not required to provide an "accident free" ship. The shipowner's duty is to furnish a vessel and her appurtenances, gear, equipment, etc., reasonably fit for their intended uses or purposes. The standard is not perfection but reasonable fitness or suitability for the intended service. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960).

4. The officers and crew members of the M/V Karl Grammerstorf were not negligent and did not cause or contribute to plaintiff's injury.

5. The M/V Karl Grammerstorf was unseaworthy in failing to provide plaintiff with a reasonably safe place to work. However, we conclude as a matter of law that the shipowner's liability rests solely upon his breach, without fault, of the nondelegable duty to provide the plaintiff a safe place to work, and the unseaworthy condition was created solely by the third-party defendant's negligence.

6. The loading operations were conducted aboard the vessel by third-party defendant. Although it was time charterer of the M/V Karl Grammerstorf, it was also acting as a stevedore, impliedly warranting that it would load

the cargo in a careful, proper and workmanlike manner. Under the facts presented here, it is clear that third-party defendant was "in a far better position than the shipowner to avoid the accident" and was "the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). Third-party defendant, therefore, had the obligation to conduct the cargo operations "properly and safely" in accordance with Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

7. The existence of the charter-party does not prevent the application of the *Ryan* doctrine. Considering the conduct and relationship of the parties insofar as the cargo operations are concerned, the defendant is entitled to assert a claim for indemnification against the third-party defendant for a breach of warranty of workmanlike performance. Rogers v. United States Lines Company, 303 F.2d 295 (3rd Cir. 1962), cert. den. 371 U.S. 876, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962). *See also,* Penoro v. Rederi A/B Disa, 376 F.2d 125 (2d Cir. 1967); Degioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962); and Mione v. Ove Skou, 1968 A.M.C. 305 (S. D.N.Y.1968).

8. Maritime law also provides for tort indemnity where there is no negligence or only passive negligence. A nonnegligent or passively negligent shipowner is entitled to tort indemnity for loss or injury suffered solely as a result of active negligence of another. Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir. 1969). *And see,* Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir. 1968), cert. den. 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968).

9. A proximate cause of the injury sustained by plaintiff was the fault and neglect of plaintiff himself in improperly performing his part of the lifting operation.

10. A proximate cause of plaintiff's injury was the active fault or neglect or the want of workmanlike performance by the third-party defendant in failing to provide and use dunnage capable of withstanding the heavy weight of the paper rolls, failing to adequately supervise the loading operation and failing to supply plaintiff and his co-workers with adequate equipment for the assigned task.

11. The accident and resulting injury sustained by the plaintiff were not caused or contributed to by any fault or neglect on the part of the ship's officers or crew members, and their conduct did not breach any provisions of the charterparty.

12. Accordingly, the Court finds that the negligence of the plaintiff and third-party defendant is as follows:

| | | |
|---|---|---|
| Plaintiff, Lee Hopson | = | 10% fault |
| Third-party defendant, Standard Fruit and Steamship Company | = | 90% fault |

Liability shall be apportioned on this basis.

13. Plaintiff is entitled to a judgment in the following amounts:

| | |
|---|---|
| Pain and suffering | $ 3,500.00 |
| Loss of wages | 528.32 |
| Medical expense incurred by plaintiff's employer | 135.50 |
| Medical expense incurred by plaintiff | 376.00 |
| | $ 4,539.82 |
| Less 10% (plaintiff's negligence) | 453.98 |
| | $ 4,085.84 |

14. Intervenor Fidelity and Casualty Company is entitled to judgment in the following amounts:

| | |
|---|---|
| Compensation | $ 170.00 |
| Medical expense | 135.50 |
| | $ 305.50 |

to be paid with preference and priority out of the proceeds of the judgment awarded plaintiff.

15. Plaintiff is awarded a judgment of $4,085.84 together with interest at 7% per annum from date of judgment and the costs of this litigation, subject

to judgment in favor of Fidelity for $305.50 as recited hereinabove.

16. The defendant is entitled to judgment in its favor against the third-party defendant for indemnity, including expenses and attorneys' fees. Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir. 1964), cert. den. 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1965); Strachan Shipping Co. v. Koninklyke Nederlandsche, Stoomboot Maalschappij N.V., 324 F.2d 746 (5th Cir. 1963), cert. den. 376 U.S. 954, 84 S.Ct. 969, 11 L.Ed.2d 972 (1964); and Guarracino v. Luckenbach Steamship Co., Inc., 333 F.2d 646 (2d Cir. 1964), cert. den. 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543 (1965).

Let judgment be entered accordingly.