**COASTAL STATES GAS CORP.,**
**Plaintiff-Appellant,**

v.

**ATLANTIC TANKERS, LTD., et al.,**
**Defendants-Appellees.**

No. 90, Docket 76–7174.

United States Court of Appeals,
Second Circuit.

Argued Oct. 21, 1976.

Decided Dec. 16, 1976.

■■■■■■■■■

John P. Vayda, New York City (Kirlin, Campbell & Keating, Richard H. Sommer, New York City, of counsel), for plaintiff-appellant.

Richard L. Jarashow, New York City (Haight, Gardner, Poor & Havens, Gordon W. Paulsen, New York City, of counsel), for defendants-appellees.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Coastal States Gas Corporation ("Coastal") appeals an order by the United States District Court for the Southern District of New York, Inzer B. Wyatt, *Judge,* that it enter into arbitration with Atlantic Tankers, Ltd.—Monrovia ("Atlantic") pursuant to a charter party between Atlantic and Foreign Energy Tankers, Inc. ("FETI"). We affirm.

## I.

On August 2, 1973 St. Paul Marine Transport Co. ("St. Paul") chartered its vessel, the M/T ST. PETER ("ST. PETER") to FETI, a Liberian corporation, for about three years. On September 14, 1973, Coastal, a Delaware corporation, guaranteed, via a letter to St. Paul, the performance of FETI, its wholly owned subsidiary. In April, 1974 St. Paul transferred the ST. PETER and its rights and obligations under the charter party to Union Carrier Corporation ("Union"), and, pursuant to clause 45 of the charter party,[1] FETI agreed to this transfer. In August, 1975 Union transferred the ST. PETER and its rights and obligations under the charter party to Atlantic, a Liberian corporation; FETI also agreed to this transfer. In October, 1975 FETI sought to cancel the charter party, and in November, 1975 Atlantic demanded that FETI and Coastal arbitrate the dispute pursuant to clause 55 of the charter party contract.[2] FETI agreed to arbitrate, and Coastal refused.

In February, 1976 Coastal filed suit seeking a declaratory judgment as to its obligation to proceed with arbitration and an

1. Clause 45 of the charter party says "Owner shall not change ownership and/or flag of the Vessel without prior written approval of Charterer."

2. Clause 55 of the charter party says:
 55. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of . . . NEW YORK, pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by Owner, one by Charterer and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the disputes or differences specified then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person, with precisely the same force and effect as if said second arbitrator had been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a judge of any court of maritime jurisdiction in the city above mentioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorneys' fees, and judgment may be entered upon any award made hereunder in any court having jurisdiction in the premises.

injunction preventing the appointment of an arbitrator on its behalf and moved for a preliminary injunction pendente lite. Atlantic made a cross-motion for consolidated arbitration among Atlantic, Coastal, and FETI. On March 19, 1976 Judge Wyatt denied Coastal's motion, granted Atlantic's motion, and ordered a stay pending arbitration.

## II.

Before reaching the merits, we must deal with Atlantic's claim, based on *Penoro v. Rederi A/B Disa,* 376 F.2d 125 (2d Cir. 1967), *cert. denied sub nom. Rederi A/B Disa v. Cunard Steamship Co.,* 389 U.S. 852, 88 S.Ct. 78, 19 L.Ed.2d 122 (1967), that Judge Wyatt's order is not appealable to this court. *Penoro* involved an order staying an admiralty suit arising out of an injury to a longshoreman pending arbitration between the ship owner and the stevedore-charterer. In this case Coastal invoked jurisdiction under both admiralty, 28 U.S.C. § 1333, and diversity, 28 U.S.C. § 1332. An arbitration order in a non-admiralty case involving a breach of a charter party is appealable. *Compania Espanola de Petroleos, S.A. v. Nereus Shipping S.A.,* 527 F.2d 966, 972 (2d Cir. 1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976). See also *N.V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp.,* 532 F.2d 874 (2d Cir. 1976) (per curiam). We hold that Judge Wyatt's order is appealable.

Atlantic argues, and Coastal does not disagree, that the law of New York governs this dispute. We agree. The charter party was drafted and executed in New York, and the arbitration is to take place in New York.

Coastal claims that with each successive change in ownership the maintenance of the ST. PETER deteriorated to such an extent that by October, 1975 "she could not perform any of the services for which [FETI] had contracted" (Appellant's Brief at 5). Coastal argues that this deterioration in the ST. PETER increased the probability that FETI would seek to repudiate the contract, which in turn increased Coastal's risk of being exposed to liability as FETI's guarantor. Not having formally consented to the changes in ownership of the ST. PETER, Coastal argues that this increase in its risk discharges its obligation as guarantor. *Becker v. Faber,* 280 N.Y. 146, 148–150, 19 N.E.2d 997 (1939). Atlantic, on the other hand, argues that the changes in ownership did not increase Coastal's risk because the changes did not increase the probability that FETI would breach the contract. We need not, however, decide whether the changes in ownership increased Coastal's risk.

Coastal, in agreeing to guarantee FETI's performance, can be presumed to have known that the charter party contract, via clause 45, contemplated the possibility of a transfer of the ST. PETER provided FETI consented; Coastal, therefore, cannot be discharged when in fact the two transfers occurred with FETI's consent. *Morgan v. Smith,* 70 N.Y. 537, 544 (1877). "A variation of the principal's contract which under the terms of the original agreement should have been anticipated as a possibility will not discharge the surety." 10 *Williston on Contracts* § 1242 at 774 (Jaeger ed. 1967).

Clause 55 of the charter party contract says "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of . . . NEW YORK." Coastal could have protected itself by coupling its guarantee of FETI's performance with a clause limiting arbitration to disputes between the original owner and FETI. Or Coastal could have protected itself by contracting with FETI, its wholly owned subsidiary, that FETI would not approve any transfer unless Coastal agreed. Not having bargained for such protection, Coastal cannot now obtain it from this court.

Affirmed.